**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA**

**CASE NO.: 1:23-cv-23223**

JAMES WEAREN and
MOSES WIGGINS
Individuals,

      Plaintiffs,

v.

X AUTO IMPORT AND EXPORT CORP.,
a Florida corporation, and
RAYAN DAZA, an individual,

      Defendants.
_____/

**MOTION FOR ENTRY OF FINAL JUDGMENT AGAINST
<u>DEFENDANT RAYAN DAZA</u>**

Plaintiffs, JAMES WEAREN and MOSES WIGGINS, each an individual ("Plaintiffs"), by and through their undersigned attorney, and pursuant to Rule 55 and Rule 54(d)[1], Federal Rules of Civil Procedure, respectfully moves this Court for entry of a default final judgment against Defendant, RAYAN DAZA, an individual ("Defendant"), and in support thereof would show as follows:

## MEMORANDUM OF LAW

### I. STANDARD OF REVIEW

When a party is in default and the clerk or Court has entered a default, the decision whether to grant a default judgment is within the sound discretion of the district court. *See Chanel, Inc. v. Replicachanelbag,* 362 F. Supp. 3d at 1259. When a default is entered, the Court takes the well-pleaded factual allegations of the complaint as true. *See Buchanan v. Bowman,* 820 F.2d 359, 361 (11th Cir. 1987). In entering a default judgment, the Court must analyze the allegations of the Complaint to confirm that all the elements required for liability are satisfied. *See Capitol Records v. Rita Carmichael*, 508 F.Supp.2d 1079, 1083 (S.D. Ala. 2007).

### II. BACKGROUND

On February 21st, 2023, Mr. Wearen and Mr. Wiggins visited the Defendant's dealership, X Auto Import and Export Corp. (hereafter referred to as the "Dealership") with the intention to select a used motor vehicle for personal, family, and household use. Complaint, ¶15. After a period of negotiation, they chose a used 2014 GMC vehicle, identified by the last digits of its VIN as 342700 (hereafter referred to as the "Subject Vehicle."). *Id*., ¶16. During the selection process, the Dealership assured Mr. Wearen and Mr. Wiggins, both verbally and in writing, that the mileage of the Subject Vehicle was 90,986 miles (hereinafter the "Mileage Representation."). *Id*., ¶17.

Due to their financial constraints, Mr. Wearen and Mr. Wiggins based their decision to purchase the Subject Vehicle on the Mileage Representation, assuming that vehicles with lower mileage generally require less maintenance compared to those with higher mileage. *Id*., ¶18. Believing they were acquiring dependable transportation at a fair price, Mr. Wearen and Mr. Wiggins financed the purchase by executing a retail installment sales contract (hereinafter the "RISC"), agreeing to a purchase price of Eleven Thousand Four Hundred Fifty-One and 45/100ths Dollars ($11,451.45). *Id*., ¶21.

---

[1] Plaintiffs file this Motion for Entry of Final Judgment as to damages *and* attorney's fees and costs in order to conserve the resources of the Court.

After completing the purchase, Mr. Wearen and Mr. Wiggins took possession of the Subject Vehicle, believing they had secured reliable transportation for their needs. *Id.*, ¶23. However, they soon became concerned about the mileage due to discrepancies between the mechanical condition of the Subject Vehicle and that of a vehicle expected to have 90,986 miles. *Id.*, ¶24.

Their concerns prompted them to obtain a vehicle history report for the Subject Vehicle, which revealed a significantly higher mileage than what the Dealership initially disclosed. *Id.*, ¶25. In preparation for their claim, Mr. Wearen and Mr. Wiggins, through legal counsel, acquired the title history for the Subject Vehicle from the State of Florida, Department of Highway Safety and Motor Vehicles (hereinafter the "DMV"), which included Certificate of Title No. 132537478, issued on October 22, 2018, referred to as the "Transfer Title." *Id.*, ¶26; DE 1-1.

The title history indicated that the Dealership acquired the Subject Vehicle on February 28, 2022, from "THE AUTO WAREHOUSE," at which time the odometer reading exceeded 190,000 miles. *Id.* ¶28. The title transfer from The Auto Warehouse to the Dealership was executed by the Defendant. *Id.*

Upon reviewing the title history, Mr. Wearen and Mr. Wiggins discovered for the first time that the Dealership had submitted a title (hereinafter the "Title Application") to the DMV for the transfer of the Subject Vehicle to them, which showed that the mileage was 90,986. *Id.* ¶30. The drastic difference in odometer readings between the acquisition of the Subject Vehicle and its sale to the Plaintiffs shows the odometer had been rolled back by over 99,000. Complaint, ¶32. The title reassignment was again by Defendant on behalf of the Dealership. *Id.*, ¶33.

As part of this reassignment, the Dealership completed a mileage disclosure of "90,986." *Id.*, ¶ 36. On behalf of the Dealership, Defendant marked the odometer declaration to indicate that the disclosed mileage did not reflect the actual mileage, aiming to feign compliance with federal and state odometer laws in case the discrepancy was discovered later by the Florida Department of Highway Safety and Motor Vehicle or the Plaintiffs. *Id.*, ¶37. This action was taken to mask the actual mileage and the misconduct associated with the odometer tampering by the Defendant. *Id.*

As alleged in the Complaint, the odometer of the Subject Vehicle was either tampered with or replaced by the Defendant on behalf of the Dealership without compliance under the Odometer Fraud Act. *Id.*, ¶52. As a result of these activities, Defendant conspired with the

Dealership to violate the Odometer Fraud Act with intent to defraud. *Id.*, ¶ 55.

On or about December 5, 2023, Plaintiffs reached a partial settlement of their claims with co-Defendant, CFS OF SOUTH FLORIDA, LLC, a Florida limited liability company ("CFS"). DE 34. The partial settlement reached with CFS did not resolve any claims against the Defendant. Wiggins Dec. 20. Additionally, no portion of the settlement proceeds provided by CFS accounted for Plaintiffs' down payment. Wiggins Dec. 21.

### III.   PROCEDURAL POSTURE

The progress- or lack thereof- if this action is the quintessential example of the lengths individuals engaged in odometer fraud will go to evade liability for their nefarious conduct.

Plaintiffs caused Defendant to be duly served with the Summons and Complaint in this matter on August 23, 2023. [DE 3]. On October 31, 2023 this matter was compelled to arbitration. [DE 29]. Defendant failed to proceed with arbitration leading to the Plaintiffs filing their Motion to Reinstate and Show Cause on May 24, 2024. [DE 55]. On June 6, 2024, this Court entered its Order to Show Cause with a June 25, 2024 deadline for the Defendant's response. [DE 61]. Having failed to respond, on July 1, 2024, this Court entered its Order Vacating Order Granting Defendant's Amended Motion to Compel Arbitration and reinstated the proceedings. [DE 65]. Once more, the Defendant disregarded this Court's directive and failed to timely respond to the Complaint resulting in the entry of a default by the Clerk on July 17, 2024. [DE 69]. The Defendant's conduct in this litigation makes plain that he never had the intention of defending this matter and simply used the arbitration gambit as an attempt to derail the claims of the Plaintiffs. Defendant's dilatory antics likewise derailed the efficiency of the legal process.

Plaintiffs now timely file this Motion for Entry of Final Judgment, seeking $10,000 in statutory damages under the Odometer Act 49 U.S.C. § 32710(a) ("Odometer Fraud Act"), along with $27,040 in attorney's fees and $1,355.84 in costs together with prejudgment and post judgment interest.

### IV.   ARGUMENT

#### i.   Legal Paradigm

Congress passed the Odometer Fraud Act to prevent fraud in the sale of motor vehicles. The Congressional intent in passing the Act was to prevent odometer tampering and to provide other general safeguards for the protection of consumers.

The Act has four major substantive provisions relating to odometers:

(1) the Act prohibits odometer tampering, advertising or selling odometer fraud devices, and operating a vehicle knowing the odometer is not functioning, 49 U.S.C. §32703;

(2) the Act establishes procedures to follow when a motor vehicle repair results in the change of an odometer reading, 49 U.S.C. §32704;

(3) the Act requires that each time a vehicle is transferred, that the transfer disclose the odometer reading and whether the odometer reading is accurate, 49 U.S.C. §32705;

(4) and the Act prohibits parties from conspiring to violate any of the Act's provisions, 49 U.S.C. §32703(4).

The Plaintiffs' Odometer Fraud Act claims against the Defendant is based on the Defendant's violation of the Act's tampering requirements of 49 U.S.C. §32703 and conspiracy to violate the Act per 49 U.S.C. §32703(4).

As a remedial consumer protection statute, the Odometer Fraud Act is broadly and vigorously applied to accomplish the Act's purposes. *Ryan v. Edwards*, 592 F.2d 756, 759-60 (4th Cir. 1979); *Hughes v. Fox*, 814 F.2d 498, 501 (8th Cir. 1987); *Sarratore v. Longview Vehicle Corp.*, 666 F. Supp 1257 (N.D. In. 1987); *Stier v. Park Pontiac*, 391 F. Supp 397 (S.D. W.Va. 1975). Broadly construing the Act promotes an important public policy. Buyers of motor vehicles rely heavily on the odometer reading as an index of the condition and value of a vehicle. An accurate indication of the mileage assists buyers in deciding on the safety and reliability of the vehicle. In enacting the Federal Odometer Fraud Act, 49 U.S.C. § 32701, et seq., Congress found that buyers are entitled to rely on the odometer reading as an accurate indication of the mileage of the vehicle and made it illegal to tamper with motor vehicle odometers. The statue also provides safeguards to protect purchasers in the sale of motor vehicles with altered or reset odometers.

Based on the well-pleaded allegations in the Complaint, Defendant has violated the Odometer Fraud Act with intent to defraud and has conspired with the Dealership to commit this violation. This entitles Plaintiffs to minimum statutory damages of $10,000.

To prevail on a cause of action under the Odometer Fraud Act, a plaintiff must demonstrate that the defendant violated the Act or its regulations with the intent to defraud. *Aguila v. Ripa & Assocs., LLC*, 587 F. Supp. 3d 1159, 1163 (S.D. Fla. 2022) (citing *Owens v. Samkle Auto. Inc.*, 425 F.3d 1318, 1321 (11th Cir. 2005).

Intent to defraud "'may be established through proof of a violation of the statute made with the specific intent to deceive or a reckless disregard' for the truth." *Tepper-Barak v. JM Auto, Inc.*, No. 16-CV-61876, 2016 U.S. Dist. LEXIS 144185, 2016 WL 6082358, at *2 n.1 (S.D. Fla. Oct. 18, 2016) (*quoting CDM Auto Wholesale, Inc. v. Jensen*, 31 F. App'x 621, 623 (10th Cir. 2002)).

Accordingly, "a [person] who lacks actual knowledge can still be liable under the Act if the buyer demonstrates 'constructive knowledge, recklessness or gross negligence.'" *Fowler v. Elegant Auto Fin. LLC*, 446 F. Supp. 3d 966, 969 (M.D. Fla. 2020) (*quoting Coleman v. Lazy Days RV Ctr., Inc.*, No. 805CV00930T17TBM, 2007 U.S. Dist. LEXIS 50514, 2007 WL 2021832, at *2 (M.D. Fla. July 12, 2007)).

Proof of odometer tampering raises a presumption that the tampering was done with intent to defraud. *Sandi v. Dependable Auto Ctr., Inc.*, 2001 WL 201849 (E.D.N.Y. Jan. 16, 2001); *Delay v. Hearn Ford*, 373 F. Supp. 791 (D.S.C. 1974). *See also Don Medow Motors, Inc. v. Grauman*, 446 N.E.2d 651 (Ind. Ct. App. 1983) (jury could properly infer dealer had requisite intent to defraud upon evidence that odometer had been rolled back absent any explanation for the change).

Intent to defraud is inferred when the transferor alters the odometer but fails to disclose that alteration in the disclosure form. *Smith v. Walt Bennett Ford, Inc.*, 864 S.W.2d 817 (Ark. 1993). Pursuant to 49 U.S.C. §32704, a person may service, repair or replace the odometer of a motor vehicle only if the mileage registered by the odometer remains the same as before the service, repair or replacement. If the mileage registered cannot remain the same, the Act requires that the odometer is adjusted to read zero; and the owner of the vehicle or agent of the owner must attach written notice to the left door frame of the vehicle specifying the mileage before the service, repair or replacement and the date of service of service, repair or replacement. 49 U.S.C. § 32704(a).

Federal courts interpreting the Odometer Fraud Act have concluded that "[a]ny human being or business entity that violates any section of the Act may be held liable." *David Hay Enters. Inc.,* No. CV-19-05042-PHX-SMB, 2022 U.S. Dist. LEXIS 5227, 2022 WL 2820800, at *3 (D. Ariz. Jan. 10, 2022) *(citing Rowan v. Rax Auto Mall, Inc.,* No. 01 C 3648, 2002 U.S. Dist. LEXIS 2202, 2002 WL 215524 (N.D. Ill. Feb. 12, 2002); *see also Rife v. Randolf Ezrre Wholesale Auto Sales LLC*, No. CV-19-04689-PHX-DLR, 2022 U.S. Dist. LEXIS 21480, 2022

WL 355088, at *4 (D. Ariz. Feb. 7, 2022) (holding dealership employees personally liable under the Odometer Fraud Act for illegal actions taken on behalf of the company).

Here, the title history shows that the Dealership acquired the Subject Vehicle from "THE AUTO WAREHOUSE," where the "actual" odometer reading was over 190,000 miles. The transfer from *The Auto Warehouse* to the dealership was executed by the Defendant on behalf of the Dealership. Subsequently, while in the care, custody and control of the Dealership, the mileage was covertly reduced to 90,986 before it was ultimately marketed and sold to the Plaintiffs by the dealership with an inaccurate odometer reading. After the Plaintiff's purchased the Subject Vehicle, the Dealership submitted a reassignment to the DMV for the transfer of the Subject Vehicle with a disclosed mileage of 90,986. This title reassignment was once more signed by Defendant on behalf of the Dealership. In this reassignment, the Defendant marked the odometer declaration to indicate that the disclosed mileage did not reflect the actual mileage.

Viewed objectively, the Defendant's intent to defraud is clear. Given the well-pleaded allegations in the Complaint as true, the drastic reduction in mileage while in the exclusive care, custody and control of the dealership shows that the Subject Vehicle's odometer was tampered with by the Defendant on behalf of the Dealership. The Defendant's subsequent execution of the mileage disclosure with a "not actual mileage" disclosure evinces knowledge of the tampering. And the Defendant's execution of the title transfers renders the Defendant liable for conspiring to commit the Act's requirements. 49 U.S.C. §32703(4).

### ii. Damages for violation of the Act.

The Odometer Fraud Act provides for treble actual damages or minimum statutory damages of $10,000. 49 U.S.C. § 32710(a). Plaintiffs were harmed by purchasing a vehicle with an impaired odometer that was tampered with by the Defendant. As set forth in the Plaintiffs' declaration, had they known the truth about the odometer reading, they would have negotiated better terms or not purchased the Subject Vehicle at all. Wiggins Dec. 18.

Each party violating the Odometer Fraud Act is liable for its own violations, and transferees may recover statutory damages from each party who violated the Act. *See Ferris v. Haymore*, 967 F.2d 946 (4th Cir. 1992); *Alley v. Chrysler Credit Corp.*, 767 F.2d 138 (5th Cir. 1985); *Ryan v. Edwards*, 592 F.2d 756 (4th Cir. 1979); *Duval v. Midwest Auto City, Inc.*, 425 F. Supp. 1381, 1389 (D. Neb. 1977), aff'd, 578 F.2d 721 (8th Cir. 1978). This result is consistent

with the Odometer Fraud Act's deterrent purposes: "The purpose of the statute is to punish odometer tamperers by imposing civil penalties upon them and to reward purchasers who discover such tampering and bring it to the attention of the federal courts." *Delay v. Hearn Ford*, 373 F. Supp. 791, 796 (D.S.C. 1974). *See also Mataya v. Behm Motors, Inc.*, 409 F. Supp. 65, 70 (E.D. Wis. 1976). Limiting a second defendant's liability to the incremental actual damages which that particular defendant caused the plaintiff would clearly not meet the Act's purposes. *See Cantrell v. Thaler Ford Sales, Inc.*, 485 F. Supp. 528, 531 (S.D. Ohio 1980).

Plaintiffs therefore seek the recovery of minimum statutory damages of $10,000. 49 U.S.C. § 32710(a). Plaintiffs need not prove any actual damages to recover the minimum statutory amount as minimum statutory damages are presumed. *See Att'y Gen. of Maryland v. Dickson*, 717 F. Supp. 1090 (D. Md. 1989); *Evans v. Paradise Motors, Inc.*, 721 F. Supp. 250 (N.D. Cal. 1989); *Williams v. Toyota of Jefferson, Inc.*, 655 F. Supp. 1081 (E.D. La. 1987).

### iii. Attorney's Fees and Costs

Generally, under the "American Rule," the prevailing party in litigation may not collect its attorney's fees from the losing party. There are, however, exceptions, such as when a statute grants courts the authority to direct the losing party to pay attorney's fees. In the present case, that statute is the federal Odometer Fraud Act, which has such a fee-shifting provision.

As its name suggests, the lodestar figure has become the guiding light of fee-shifting jurisprudence." *Burlington v. Dague*, 505 U.S. 557 (1992). In *Hensley v. Eckerhart*, the Supreme Court noted that "[i]deally...litigants will settle the amount of a fee." 461 U.S. 424 (1983). But where settlement between the parties is not possible, "[t]he most useful starting point for [court determination of] the amount of a reasonable fee [payable by the loser] is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." Id. at 433.

Thus, the lodestar method governs federal-court adjudication of disputes over the amount of fees properly shifted to the non-prevailing party in the litigation. *See Id*. at 440. Furthermore, the Supreme Court has held that courts must indulge a "strong presumption" that the lodestar "represents a 'reasonable" fee." *Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565 (1986).

The Lodestar method necessarily requires a court to first determine an attorney's reasonable hourly rate, and to multiply that rate by the number of hours reasonably expended. *See, e.g., Loranger v. Stierheim*, 10 F.3d 776, 781 (11th Cir. 1994); *Norman v. Housing Auth. Of*

*Montgomery*, 836 F.2d 1292, 1299 (11th Cir. 1988). Following the court's calculation, "the court must next consider the necessity of adjustment for results obtained." *Norman* at 1302.

The Supreme Court has held that the most critical factor in determining the reasonableness of an award of attorneys' fees is the degree of success obtained. *Farrar v. Hobby*, 506 U.S. 103 (1992) (quoting *Hensley v. Eckerhart*, 461 U.S. 424 (1983). Success must be measured not only in the amount of the recovery but also in terms of the principle established and the harm checked.

In the present case, Plaintiffs held Defendant to account for its brazen failure to comply with the federal Odometer Fraud Act. Defendant on the other hand, all but ignored its obligations as a litigant and has by all accounts abandoned the defense of this action.

Plaintiffs expended a total of $27,040 in attorney's fees in the prosecution of this case which is 67.70 hours by Attorney Joshua Feygin whose hourly billing rate is $400/hour. Plaintiffs now seek an award of $27,040 in reasonable attorney's fees in this action that were necessarily incurred in the prosecution of the claims raised against Defendant and Dealership which were inextricably intertwined.

A detailed description of the fees incurred by the undersigned is delineated in the timesheets attached hereto as Exhibit "A." Also attached is an affidavit of the undersigned, attached hereto as Exhibit "B."

    a. **Entitlement to Attorney's Fees**

Under Federal Rule of Civil Procedure 54(d)(2), a prevailing party is entitled to recover attorney's fees and costs when a statute or contract authorizes such an award. In the context of the Odometer Fraud Act, the statute explicitly provides that "the court **shall** award costs and a reasonable attorney's fee to the person when a judgment is entered for that person." 49 U.S.C. § 32710(b). (emphasis supplied). This directive leaves no discretion to the court; the award of attorney's fees to a successful plaintiff is not merely permissible but mandatory. The compulsory nature of attorney's fee awards under the Odometer Fraud Act is supported by case law. In *Duval v. Midwest Auto City Inc.*, the Eighth Circuit affirmed that the Act mandates the award of attorney's fees to the prevailing plaintiff, reinforcing the statute's clear intent.

Similarly, the Illinois Appellate Court in *Hall v. Riverside Lincoln Mercury-Sales* recognized that the provision of mandatory attorney's fees is an integral component of the Act, further solidifying the legislative mandate. Thus, in accordance with the Odometer Fraud Act and the prevailing case law, a successful plaintiff is entitled to an award of both costs and reasonable

attorney's fees, reflecting the Act's intent to ensure full recovery for victims of odometer fraud and to dissuade future acts of odometer fraud.

Prosecuting odometer fraud under the Odometer Fraud Act necessarily requires demonstrating the defendant's intent to deceive, a requirement that often poses significant challenges. Wrong-doers rarely admit to their misdeeds and will often obfuscate the facts at any and every step possible. The Act's provision for the recovery of attorney's fees aims to incentivize legal action against such fraud by ensuring that plaintiffs can recover reasonable legal costs. However, the reality that attorney's fees can far exceed the actual damages awarded—evidenced in cases like *Farmers Coop. Co. v. Senske & Son Transfer Co.*, where attorney fees surpassed $100,000 for damages of just over $42,000—may deter attorneys from pursuing these cases due to the disproportionate effort versus recovery ratio. Moreover, as is the case here, many times the bad actors will simply abscond into the abyss in an attempt to flee from the consequences of their actions. The combination of these factors underscores the complexities and challenges inherent in prosecuting odometer fraud cases, highlighting the need for strategic legal planning and the potential for legislative or procedural adjustments to better facilitate justice in such cases.

In calling for a national policy against odometer tampering,[2] Congress clearly articulated its intent to encourage private attorneys to prosecute these cases by providing the award of reasonable attorney fees for successful actions, even if the actual damage recovery can be relatively small. See *McGinty v. Beranger Volkswagen, Inc.*, 633 F.2d 226 (1st Cir. 1980) ($3,000 attorney fee award vacated for determination why $17,000 request was rejected).

"The value of an attorney's services is not only measured by the amount of the recovery to the plaintiff, but also the non-monetary benefit accruing to others, in this case the public at large from his successful vindication of a national policy to protect consumers from fraud in the used car business." *Fleet Inv. Co. v. Rogers*, 620 F.2d at 794. Thus, as a result of Plaintiffs' successful action under the federal Odometer Fraud Act in this case, Plaintiffs are entitled to an award of reasonable attorney's fees for the time necessarily and reasonably expended.

### b. Judgment to be Entered in Favor of Plaintiff

---

[2] The Senate Report states: "Finally, there is a need to adopt a national policy against odometer tampering. Some 17 states presently have legislation prohibiting persons from tampering with odometers. A national policy against such practices is needed." S. Rep. No. 92-413 (1971), reprinted in 1972 U.S.C.C.A.N. 3960, 3964.

The Supreme Court has defined a plaintiff as the "prevailing party" for purposes of an award of attorney's fees "if [the plaintiff] succeed[s] on any significant issue in litigation which achieves some of the benefit the parties sought in bringing the suit." *Hensley v. Eckerhart*, 461 U.S. 424 (1983). Upon the entry of a Default Final Judgment against the Defendant, Plaintiffs will be the prevailing parties in this action with respect to the claims against the Defendant. Thus, the Plaintiffs will undeniably be the prevailing parties in this action.

### c. Reasonableness of Attorney's Fees Sought

Under the lodestar method, a reasonable hourly rate for an attorney is "the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." *Norman*, 836 F.2d at 1299 (citations omitted). See also *Duckworth v. Whisenant*, 97 F.3d 1393, 1396 (11th Cir. 1996). The "relevant market" is "the place where the case is filed." *Am. Civil Liberties Union of Ga. v. Barnes*, 168 F.3d 423, 437 (11th Cir. 1999) (quoting *Cullens v. Ga. Dep't. of Transp.*, 29 F.3d 1489, 1494 (11th Cir. 1994)). To establish that the requested hourly rate is consistent with the prevailing market rate, the fee applicant must produce "satisfactory evidence" that "speak[s] to rates actually billed and paid in similar lawsuits." *Norman*, 836 F.2d at 1299. This requires "more than the affidavit of the attorney performing the work," and generally includes evidence of the rates charged by lawyers in similar circumstances, or opinion evidence of reasonable rates. *Id*.

In the present case, the relevant market is South Florida. This Court recently conducted a review of a fee petition filed in the matter of *Iloominate Media, Inc., v. CAIR Florida, Inc. and CAIR Foundation Inc.,* 2021 WL 4030008 (S.D. Fla. August 4, 2021). The Court noted that in other matters it had found the following rates to be reasonable for litigation in this district: "Senior partner with 27 years' experience: $675; Lawyer with 8 years' experience: $500; and, Lawyer with 3 years' experience: $350." *See Kleiman v. Wright,* 2020 WL 1980601 (S.D. Fla. Mar. 17, 2020). In the present case, Plaintiffs petition this Court for an hourly rate of $400 for Attorney Joshua Feygin who has 7.5 years of experience, which is in line with the rates this Court awarded in *Kleiman,* and are in line with the rates this Court awarded in other matters.

In assessing the reasonableness of the hourly rates claimed, a court may also take into account the pertinent factors set forth in *Johnson v. Georgia Highway Express, Inc*., 488 F.2d 714, 717-19 (5th Cir. 1974). These factors include the skill and experience of the attorney, the hourly rate normally charged by the attorney, and the rates billed by other attorneys in similar

actions. Additionally, a court may rely on its own knowledge, experience, and expertise in determining a reasonable hourly rate. *Norman*, 836 F.2d at 1292; *Avirgan v. Hull*, 705 F. Supp. 1544, 1549 (S.D. Fla. 1989).

### d. The Johnson Factors

The *Johnson* factors, which inform the calculation of the lodestar in the Eleventh Circuit, also weigh in favor of the requested fee award in this case. See *Johnson*, 488 F.2d at 717-19 (setting forth a subjective method of determining reasonable fees based on 12 factors); see also *Norman*, 836 F.2d at 1299 (recognizing that the Johnson factors may "be considered in terms of their influence on the lodestar amount" (citation omitted)). These Johnson factors include:

> (1) time and labor expended; (2) novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorneys' opportunity costs in pressing the litigation; (5) the customary fee for similar work; (6) the attorneys' expectations at the outset of litigation; (7) time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) experience, reputation and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the attorney-client relationship; and (12) fee awards in similar cases.

*Johnson*, 488 F.2d at 717-19.

The *Johnson* factors support the request for attorneys' fees in this matter.

First, the time and labor required in this matter as detailed in the undersigned's time sheets was undoubtedly necessary in order to reach the result obtained. Without the skill and diligence of competent counsel such as the undersigned, Plaintiffs would have likely obtained much less in the resolution of this action.

Second, as it relates to the novelty, difficulty and the skill required to perform the legal services rendered, the prosecution of cases under the Federal Odometer Fraud Act demands a distinct set of skills due to the specialized nature of auto dealership fraud and the complexity of titling schemes. Attorneys operating in this field must possess a deep understanding of the nuanced and often technically challenging schemes within the auto sales industry. The realm of motor vehicle dealership law, along with associated consumer claims, is a highly specialized and narrow area of practice. It requires a practitioner to adeptly handle a myriad of competing and at times contradictory legal principles. The legal issues presented in odometer fraud cases are not only novel but also inherently challenging, necessitating a practitioner with a considerable degree of legal acumen and extensive experience. The ability to competently navigate these intricate legal

waters is paramount. Counsel in odometer fraud claims must be equipped with a substantial level of skill to effectively advocate on behalf of the plaintiff and to surmount the numerous hurdles that these cases typically present.

Specialization, and the attendant economies of time that result, is a ground for awarding an hourly rate at the high end of the spectrum. As the court observed in *White v. State of Alabama*, Case No. 94-T-94-N, 1966 U.S. Dist. Lexis 9347 (N.D. Ala. June 20, 1996), a voting rights case in which the court found that the plaintiff's attorneys' "expertise enabled them to prosecute this case very efficiently,"

> [A]ttorneys with less knowledge and experience would have taken many more hours to pursue this litigation. Therefore, Agricola's and Jordan's "efficiency justifies an hourly rate at the high end of the customary range." *Gay Lesbian Bisexual Alliance v. Sessions,* No. 93-T-1178-N, 843 F. Supp. 1424, (M.D. Ala. June 6, 1996); *see also Coleman v. Cannon Oil Company*, 911 F. Supp. 510, 515 (M.D. Ala. 1995) ("A lawyer already skilled in the area could demand a higher rate because he or she would be more knowledgeable and could work more efficiently"); *Dillard v. City of Elba,* 863 F. Supp. 1550, 1553 (M.D. Ala. 1993) (experienced attorneys prosecuted case in fewer hours than inexperienced attorneys would have); *Curry v. Contract Fabricators Inc. Profit Sharing Plan*, 744 F. Supp. 1061, 1071 (M.D. Ala. 1988) (attorney's "inexperience should be reflected in [lower] ... hourly rate"), *aff'd,* 891 F.2d 842 (11th Cir. 1990).

*Id.,* at Lexis *14-15.

The substantial investment of time and resources necessary to litigate the dispute—primarily due to the Defendant's lack of prompt and proper resolution of the Plaintiffs' claim—has hindered Plaintiffs' counsel from undertaking new legal matters. Additionally, this has diverted counsel's time away from existing clients and other legal work. Plaintiffs' counsel typically represents clients on a contingency/fee-shifting basis. As a result, any matter such as this one when litigation is required necessarily precludes other employment by Plaintiffs' counsel. Regarding the customary fees and awards in similar cases, it is challenging for Plaintiffs' counsel to provide a precise assessment due to the limited number of consumer-focused auto dealership attorneys in the local area. As a result, there is a dearth of information regarding fees customarily charged in the local area for similar services to those provided in this case.

Notwithstanding, according to the 2017-2018 United States Consumer Law Attorney Fee Report, the median attorney rate for lawyers in South Florida who handle car cases is $400/hour, and 95% median is $675/hour. *See* Exhibit "C," pg. 258. In addition, the Declaration of Attorney Robert W. Murphy attests to the reasonableness of the hours expended and fees sought by the

undersigned in this action. *See* Exhibit "D."

With respect to the attorney's expectations at the outset of the litigation, the undersigned must confess his expectations were relatively low given his experience in similar matters with similarly situated defendants. As explained in the below discussion regarding the undesirability of the case, oftentimes small, non-franchise dealerships such as the Defendant in this matter will take on a scorched earth approach to litigation or simply disappear, leaving aggrieved consumers and their counsel without recourse.

Regarding the undesirability of the case, consumer claims against small, independent motor vehicle dealerships and their principles present a host of challenges that render them unattractive to most lawyers. These dealerships frequently lack the financial resources to satisfy judgments, and they may shut down or restructure under a new corporate identity to circumvent liability, or opt to file for bankruptcy. Such dealerships are also known to engage in protracted litigation tactics aimed solely at delaying proceedings and pressuring plaintiffs and their attorneys into accepting less favorable settlements. The financial stakes in these claims are typically modest, yet legal expenses tend to exceed the potential damages early in the litigation process. Understandably, consumers are reluctant to enter into hourly fee arrangements, leaving contingency fee agreements as the only viable option. However, the disparity between the small amounts at issue and the substantial legal fees means that standard contingency arrangements, where counsel's compensation is a percentage of the client's recovery, are not economically viable for attorneys. Consequently, counsel is often limited to pursuing claims where the client is statutorily entitled to recover attorney's fees, as is the case here.

Next, a significant majority of these cases are initially brought in court, only to have the dealership reveal that it has an arbitration agreement that it had withheld from its customer. These matters are then compelled to arbitration where the consumer loses its right to a trial by jury, as well as a litany of other rights to redress depending on the arbitration agreement. In March, 2015, the Consumer Financial Protection Bureau, a federal agency created pursuant to the Dodd-Frank Wall Street Reform and Consumer Protection Act, issued its Arbitration Study that confirmed the suspicions of limited success in consumer arbitrations. The 728-page Report examined consumer arbitrations and found that when consumers were seeking affirmative relief against businesses, the consumers obtained affirmative relief just 9.4% of the time, which means that the business prevailed on the consumers' claims for affirmative relief 90.6% of the time. Arbitration Study,

Consumer Financial Protection Bureau; §1, p. 12 (March 2015). Accordingly, consumer arbitrations are highly undesirable since they have such a low success rate in the paradigm designed by the businesses. In addition, as was the case here, oftentimes dealers will compel arbitration with no true intent in proceeding with the arbitration proceedings with the sole purpose of derailing the consumer's pursuit of justice.

As a result, it is indisputable that consumer claims against motor vehicle dealerships are undesirable. The consumer's attorney often has a high likelihood of not being compensated for their time pursuing the matter and can even end up at a net loss due to cost outlays throughout the progression of the case.

The only gratifying element of advocating for consumers in disputes with motor vehicle dealerships is the intrinsic satisfaction gained from helping individuals obtain dependable and safe transportation. Taking on such cases offers a pathway for those with limited resources to seek justice against dealerships, who might otherwise go without legal representation.

### e. Entitlement to Recover Fees for the Time Expended Litigating the Issue of Attorneys' Fees

An award of fees is appropriate for the time expended in pursuing a Motion for an Award of Attorney Fees. *See Villano v. City of Boynton Beach*, 254 F.3d 1302, 1309-10 (11th Cir. 2001) ("A prevailing party is entitled to reasonable compensation for litigating a [fee] award."); *Johnson v. State of Mississippi*, 606 F.2d 635, 638 (11th Cir. 1979) ("We conclude that attorney's fees may be awarded for time spent litigating the fee claim."). Plaintiffs' motion incorporates the time incurred by his attorney through the date of submission of the present motion.

### f. Billing Judgment

Plaintiffs' counsel has taken every conceivable step to ensure the accuracy and necessity of their billing entries in this matter. Counsel is cognizant of his obligation to exercise billing judgment and to avoid any excessive, duplicative, redundant or otherwise unnecessary hours. To that end, Plaintiffs' counsel has not charged for solely administrative tasks such as preparing and issuing mailings, submitting filings, submitting proposed orders, issuing pleadings for service of process, etc.

### g. Costs

Under the Federal Rules, prevailing parties are entitled to recover costs as a matter of course unless otherwise directed by the court or statute. *See* Fed. R. Civ. P. 54(d)(1). Rule 54(d)

creates a presumption in favor of awarding costs to the prevailing party. See, e.g., *Guillaume v. NY Bagel Boy, Inc*., 2015 WL 13776788 at *4 (S.D. Fla. 2015) citing *Manor Healthcare Corp. v. Lomelo*, 929 F.2d 633, 639 (11th Cir. 1991). Courts may only tax costs as authorized by statute. See *EEOC v. W&O, Inc*., 213 F.3d 600, 620 (11th Cir. 2000) citing *Crawford Fitting Co. v. J.T. Gibbons, Inc*., 482 U.S. 437, 445 (1987). Section 1920 enumerates expenses that a federal court may tax as a cost under the discretionary authority found in Rule 54(d). See *Guillaume*, 2015 WL 13776788 at *4 citing *Crawford Fitting Co*., 482 U.S at 441-42; see 28 U.S.C. § 1920.

Plaintiffs appended their Bill of Costs to identify the taxable costs for this action. *See* Exhibit "E". Plaintiff seeks recovery of his costs pursuant to the Bill of Costs filed herewith. The items identified by the Plaintiffs in the Bill of Costs as a specifically taxable cost identified in 28 U.S.C. §1920 are the following: Filing fee: $ 402.00; Fees for service of summons and subpoena $241.00.

Also included in the Bill of Costs are other fees, such as postage, service of process costs, public records requests costs, expert witness fees and case-specific supplies that were necessarily incurred in the prosecution of this action. While labeled as "costs," expense items such as public record requests, postage, expert witness fees and supplies should be taxed against Defendant as "fees," since these expense items would normally be borne by fee-paying clients.

The Eleventh Circuit Court of Appeals considered whether expenses that are necessary for the prosecution of a COBRA case such as mediation fees, travel, and parking costs could be properly taxed against a losing Defendant in *Evans v. Books-A-Million*, 762 F.3d 1288, 1299 (11th Cir. 2014). The Eleventh Circuit recognized that the following analysis should control whether these types of expenses should be taxed against the losing party based upon a statutory prevailing party attorneys' fee provision:

> We therefore hold that reasonable litigation expenses such as mediation, legal research, postage, and travel may be recovered under § 1132(g)(1) if it is the prevailing practice in the legal community to bill fee-paying clients separately for those expenses. *See Jenkins*, 491 U.S. at 285–87 & n. 9, 109 S.Ct. 2463. Because the district court did not consider the prevailing practice in the local community or the reasonableness of *Evans*' expenses, we remand on this issue.

*Evans*, 762 F.3d at 1299.

It is the undersigned's practice, to routinely bill (and shift the burden of paying to) fee paying clients for such things as public records requests, postage, case-specific supplies, and

mediation fees. The undersigned's practice of passing these costs on to fee-paying clients is in accordance with the practice in the community for passing through or passing along such costs to fee-paying clients. Consequently, items such as public records costs, postage, case-specific supplies, expert witness fees, and post-judgment expenses, "may be awarded as attorneys' fees if the district court determines they were reasonably incurred in the course of case preparation, settlement, or litigation." *Evans*, supra.

Here, the undersigned seeks the award of the following costs as "fees" which were necessarily incurred in the prosecution of this action:

| | |
|---|---|
| FL DHSMV Title History Request Fee | $35.00 |
| Postage: | $45.35 |
| Expert Witness (Attorney Fees) | $632.50 |
| TOTAL: | $1,355.84 |

## V. CONCLUSION

In accordance with the above argument and legal authorities, JAMES WEAREN and MOSES WIGGINS, each an individual, seeks the entry of a judgment against Defendant, RAYAN DAZA, an individual, as follows:

a. an award of minimum statutory damages to the Plaintiffs in the amount of $10,000, together with prejudgment and post-judgment interest;

b. an award of attorney fees in the amount of $27,040 and costs in the amount of $1,355.84 pursuant to 15 U.S.C. Section 1640 and 49 U.S.C. §32710(b); and,

c. a finding by the Court that the judgment rendered is based on fraud within the meaning of 11 U.S.C. § 523(a)(2)(A), and additionally constitute willful and malicious injury to another entity or to the property of another within the meaning of 11 U.S.C. § 523(a)(6) in order to prevent the Defendant from improperly discharging the judgment in bankruptcy proceedings.

## CERTIFICATE OF CONFERRAL PURSUANT TO LOCAL RULE 7.1(3)

Pursuant to Local Rule 7.1(3) the undersigned attempted to confer with Defendant in a good faith effort to resolve the issues raised by this Motion but was unable to do so. Defendant remains defaulted at the time of the filing of this Motion.

    Dated: August 9, 2024

*/s/ Joshua E. Feygin*
JOSHUA FEYGIN, ESQ.
FL Bar No.: 124685
Email:  Josh@JFeyginesq.com
**SUE YOUR DEALER – A LAW FIRM**
1930 Harrison St, Suite 208F
Hollywood, FL 33020
Tel: (954) 228-5674
Fax: (954) 697-0357
*Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on August 7, 2024, I electronically filed the foregoing document with the Clerk of Court for the U.S. District Court, Southern District of Florida, using the CM/ECF system, and that the foregoing document was served electronically to all counsel of record and upon DEFENDANT RAYAN DAZA via USPS First Class Mail to: Rayan Daza, 6023 B Hollywood Blvd., Hollywood, FL 33024

*/s/ Joshua E. Feygin*
JOSHUA FEYGIN, ESQ.
FL Bar No.: 124685